Good morning, everyone, and welcome to the Ninth Circuit in San Diego. Before we begin this morning, a couple of matters. First, Judge Owens and Lee and I would like to thank the judges of the Southern District of California for making this possible and their staff, and we would like to thank Judge Amartino for the loan of her chambers and courtroom, and Judge Burns for being such a gracious host. We are going to hear the cases today in the order that's on the calendar. The first case, Sean C. Moseley v. Andrew Saul, has been submitted under briefs, and the fourth case, Demko v. Unum Life Insurance Company of America, has also been submitted under briefs. There's a clock on the podium. Counsel should note that the clock counts down. When it starts counting up, you've gone over time. If you want to save some time for rebuttal, please try to tell us, and I'll try to remind you, but you're responsible for watching your own time. With that, the first case on our calendar is Sayre v. J.P. Morgan. Counsel, whenever you're ready. May it please the Court, my name is Marie Murch. I'm here on behalf of the appellant, Bradley Sayre. As you know, this is a consolidated appeal, that there's two issues that have been raised, whether the arbitrators were unreasonable in refusing to continue the arbitration, and then ask for the federal case that was filed separately on the Dodd-Frank, and some other claims that was dismissed per res judicata because of the outcome of the federal case, if that was proper dismissal. I want to start with the res judicata, because I think that one maybe has a little bit more to it to discuss. If the FINRA gets, if you reverse on that, obviously the res judicata would not apply to the federal claims. Let me ask you a question about that. Assuming that you're correct and the arbitration award should be vacated, the question of whether the second action is subject to a motion to compel arbitration is not before us, is it? No, it's not. That was part of their motion to dismiss in the district court. They had, I think they called it a motion for summary judgment. Right, and the district judge ruled on the basis of res judicata. Yes. So that if we were, hypothetically, if we were to agree with you that the previous arbitration award should be vacated, we should be sending the second case back to the district court to deal with the balance of their motion? Yes, although those claims could have been, as in res judicata, you know, if they could have been brought in the other form, then they're behind the res judicata. The initial claim that couldn't be that, I argue, was Dodd-Frank, but as noted in my brief, that law has changed. Well, and that's your argument, but I mean, I guess my point is the question of whether these, the claims of the second action are arbitrable and therefore should have been brought in the first action hasn't been decided by any court yet, has it? No, it hasn't, but that's a good question. Could they have been arbitrated theoretically? Yes, and she had said, well, they were state claims, so they would be arbitrated, but on the wrongful termination and violation of public policy, that has to be tied to a statute, the public policy, and the statute in this case, it's the second claim in the federal case, it's 18 U.S.C. 1514A, and under subsection E, a pre-arbitration agreement is not enforceable and it's void as to a claim under that statute. Now, I took you off track, but I wanted to, but the answer to my question is the district judge never addressed any of these issues. Correct, correct. Other than saying they were state claims that, she did say that could have been brought, and saying that they were state claims that could have been brought, and what I just mentioned was an exception where that one, the appellant, Bradley Sear, would have to have agreed for it to go to arbitration to give up his right to a jury trial for that one to be, it wasn't mandatory arbitration, I guess is what I'm trying to say on that one. But if you reverse the case, I'll be compelled to arbitration, yes? It could be, yes. Get back to where you started, I'm sorry. Okay. You were going to tell us why you thought the district court erred in not vacating the arbitration award. Okay, and just one other thing, just on the race to Dakota, just, pardon me, just one thing I wanted to claim, is that it wasn't final, that was the other element, and if you want me to argue that, I will. The time is yours. Okay. Then as far as the refusal to postpone the arbitration hearing, you've read the facts, and under the Federal Arbitration Act 10A, and as well as under California court, there's, it's very limited, I acknowledge it's very limited in vacating an arbitration award. This case falls under one of the very limited circumstances, which is when the arbitrators refuse to postpone the hearing upon showing a good cause. There was a good cause in this case. The claimant's lawyer, who is my husband, Mr. Merge, he was in their emergency room when they ruled and denied the continuance. He started on the first day, he tried, he was ill. I know his health. Probably better than he does, but I took him to the doctor, hoped he'd get better, I got the continuance to start the next day. Unfortunately, he got worse, and I know his history of his medical conditions, stroke, seizure, other things that I was concerned with. Took him to the urgent care, and it happened to be an ER doctor that was there, and she said emphatically, and I think I quote it many times, bold, willful, take him to the ER right away, he needs an MRI. So when I did that, I got back, brought that information back to the arbitrators, and if you read in their award, their reasoning that it was okay for them to do that, they say, well, we had enough in front of us, we had the exhibit books, we got partial testimony from one witness, Mr. Sears' voluntary absence from the arbitration is a good cause. They don't say anything about Mr. Merge's absence, which is, I think, what's been really overlooked. If it was just that, take Mr. Merge's saying it was still okay to do it, and Bradley Sears just decided, I'm not going to go along with my wife's having a baby. Okay, I can see this, but the point is... The other side in their briefs mentions that you were listed as co-counsel for Mr. Sears. Was there any discussion with the arbitrators about whether or not you might be available to pick up the hearing? There was some, but at that time, I was not prepared. And ethically, it would have been improper for me to take on an arbitration that I was not prepared for. I could have, if they had continued it, even if they had given the three days that the note was from the doctor that Mr. Merge couldn't work, he couldn't work further than that. But even if they just took that, that would have given me five days, maybe, to prepare. But on the spot like that, I wasn't prepared. I gave them, put together the exhibit binders, I sent them a list of witnesses. This is who's going to call. Well, that's something anybody could do. I wasn't prepared to do it, and I couldn't violate my ethical obligations. Can you help me out with the record a little bit here? I know that a three-day continuance was sought because of Mr. Merge's illness, correct? A three, well... Because at one point, somebody was asking for 21 days, and at some other point, somebody was asking for an indefinite continuance. Did the doctor's note say he would be available in three days if... The doctor's note said he was excused for the remainder of that week, which was three days, brought it to a Friday. So if they would have even just continued it, like I said... So that's my question. Does the record indicate whether or not the arbitrators were told that he would be available on the next Monday? Yes. And I believe that they say that in their order when they're just discussing the facts. And actually, it says on excerpts of record, page 678, in the middle of the arbitration award, it says, the memo regarding Mr. Merge's health gave no date of actual availability return, but it indicated he could not return for the remainder of the week, i.e. through July 21st, 2017. So that would have been three days plus the weekend? Yes. Okay. That was part of the problem. I was having trouble with three versus five when I looked at the record. Okay. Counsel, if the arbitration proceeding moved forward, what type of evidence or witnesses would you have provided? Mr. Serra would have testified. And as I said in my brief, even if he physically couldn't be there, we've had testimony by phone. We would have called our witnesses, cross-examined them, the documents that were in the exhibit binders that would have been discussed. We would have shown the discrepancies, the contradictions in them that you just can't see by the judge accepting, okay, like if you go to trial court, here's our exhibit binders. And like, okay, we don't need anything else. We're just going to look at that. It's just not fair. Is there anything in the record that says that Mr. Serra would have been available to testify by phone? I honestly, I can't remember if I argued that or not. I know he had a note saying he was going to take the family leave for his son. And one thing that I see throughout their briefs, when I was reading the briefs, that I was asking for an indefinite postponement. I wasn't. I was asking for a minimum of those three days or to accommodate Mr. Serra, six weeks or whatever. And it seemed like it was all going fine. People were looking at their calendar, but then it was like, well, nobody's available for a year, so no. And that was one of the reasons for denying it was because of the age of the case, which was not the fault of ours. Counsel, looking at the exhibit to your declaration, which is the email from your client, and I apologize for the feedback, it says here, due to the birthing of my first child, I will be unable to attend the remaining hearings for this proceeding as currently scheduled for the week of the 19th or the next week starting the 24th. I must therefore request this proceeding be postponed to a later date. I furthermore intend to take up to 12 weeks of personal time. I don't see anything in here saying he'll be available by phone or he can be there on a moment's notice. It just says he can't do it the next two weeks, and then he needs 12 weeks. So what in the record but was before the arbitrator suggests that he would be available by phone, that this, in fact, could continue on the path you're suggesting? I don't know that there is anything there. Because in this appeal, I was focusing on Mr. Murch's health. Because even if Mr. Serra could have been there, still that week, he didn't have his counsel. But what was before the arbitrators at that time was not merely the request that counsel record your husband was unavailable. It also was this request by the plaintiff saying, basically, I can't be here for the next three months. Why can't the arbitrators take that into consideration when they're deciding whether to go forward or not? They can, but you have to take it all in context. And like I said earlier, if that were the only reason, I probably wouldn't be here on that part of the appeal. But what if for the arbitrators that was enough? I disagree with them because I don't know. What, did they expect Mr. Serra to go in and represent himself? Well, no, no. Here's the thing. Mr. Serra has made himself unavailable for a good reason. Birth of a child. I get that. But this is, you know, unless it's like the Immaculate Conception, they've known about this for a while, and all of a sudden the hearings start, and then all of a sudden I'm gone for 12 weeks. Why can't the arbitrators say, you know what? We think this guy's running from this thing. We're not going to wait around 12 weeks. Even if Mr. Mertz was here, we're still going to kick this for, kick this. When it was said, first of all, she wasn't pregnant, unfortunately, Mr. Serra didn't tell us until Sunday prior. Well, let me ask the question differently. Let's assume Mr. Mertz could have been there the next Monday. And Judge Lee asked you, what would he have put on? And you said, well, Mr. Serra would have testified. Yes. The record seems to indicate that Mr. Serra would have been unavailable to testify. So, what evidence were you prevented from putting on because of this abrupt termination of the hearing? Okay. Besides taking Mr. Serra totally out of the picture, assuming he couldn't be there, there was the testimony that Mr. Mertz would have gotten on me if I would have eventually had to do it. Again, with the documents, there's documents in there where the dates contradict. There's statements made in some that are contradicted. That could have been brought out through their witnesses, through cross-examination or direct on taking the case. They would have been able to look at the documents and possibly explain them, put them in a context, and see. Because there were some pretty blatant discrepancies. I can't detail them for you now. But between the documents that somebody had to talk about, and Mr. Mertz could have pointed out. So, even without Mr. Serra, he should have been given the opportunity to have the witnesses testify. Even without Mr. Serra, the other witnesses that we had listed, and even including their witnesses to testify as to the documents. Do you want to save some time for rebuttal? Yes, I'd like to save. Thank you. Mr. Abbott. Go ahead. Good morning. May it please the court, I'm Daryl Landy. I represent the appellees in this case. Judge San Martino's orders denying vacater of the arbitration award and dismissing Mr. Serra's federal action should be affirmed. The record does not come close to supporting a finding that the arbitrators were guilty of misconduct. And that is the test, whether they were guilty of misconduct. Well, but the statute defines one of the reasons that we can vacate an arbitration award as an unreasonable refusal to grant a continuance. So, let's not, we're not required to find that the arbitrators engaged in some sort of nefarious misconduct. The question in front of us is whether this record establishes that they unreasonably refused to continue. Correct? I don't, with all due respect, Your Honor, I don't agree that it's an unreasonable standard. The statute says whether they're guilty of misconduct. So, what standard, do they have to refuse to continue because they're being bribed by the Ukrainians? Well, that would be one. So, what's the standard of misconduct? Let's assume somebody comes in and says, I need a one-day continuance because I have a medical emergency, or a three-day continuance. And the arbitrators say, nah, we're just going to conclude the hearing now and do it on the record. Would that qualify? If that were arbitrary, then that's what the language of the sheet is. Okay, so what we're looking for is arbitrary action, not misconduct, right? Well, arbitrary, the definition of misconduct is defined in the case law by arbitrary action. Okay, so let's focus, as opposed to focusing on words, what's troublesome about this case is counsel gets sick. Nobody doubts he gets sick. He brings in a doctor's note. A doctor's note is brought to the arbitrators. He says, it's a Wednesday. I need to resume next Monday. And the arbitrators say, nah, we've got enough. We'll just decide the case right now. No final argument, no hearing from you. You don't get to put on your witnesses. If a district judge did that, we would find that to be arbitrary. So, why isn't it arbitrary when the arbitrators do it? Well, there are a couple of reasons. First, Your Honor, the test is not just the arbitrariness, but it's not arbitrary if there is any reasonable basis for the arbitrator's decision. In this case, Judge Sammartino looked at the record, and you're looking at Judge Sammartino. We reviewed de novo, though, here. So, we have enormous respect for Judge Sammartino, but we have to do the same job she did. So, let's figure out what we should do. Well, and the record here is significant because the request was not for just three days. The request with respect to Mr. Murch was for three days, but the request for the postponement was indefinite, not only by Mr. Sayert, but by Ms. Murch herself. And if you look at ER 163, when Ms. Murch came back with her notes, the doctor's note, which said that Mr. Murch should have been in urgent care that day, the second day of the arbitration hearing, and Mr. Sayert's note, she said, I renew my motion for continuance and to vacate the dates this week and next week and continue this hearing until the next possible date. That was the information before the arbitrators at that time, in addition to Mr. Sayert's note saying that he unilaterally was taking... So, let's assume that the request that the claimant made was excessive. Do the arbitrators have any responsibility to say, no, but we'll resume next Monday? As opposed to just saying, gee, you've asked for too much and therefore we will stop the hearing right now and decide on what we have? In other words, I would assume if you were in court doing this, the judge would say, I'm not going to give you an indefinite extension. You'll be back here next Monday when you're healthy. They didn't do any of that. They didn't have that discussion. They just said, well, we're stopping. Why isn't that arbitrary? Well, it's not arbitrary because they had additional information before them. They didn't have the option. If you put yourself in the arbitrator's perspective, they didn't have the option of coming back next Monday because Mr. Sayert had already said, I'm not going to be there. And Ms. Mertz... Why couldn't they continue the hearing without Mr. Sayert? Well, they did. They did continue it that afternoon after Ms. Mertz left and after Mr. Sayert left. They allowed for motions by... They allowed for the respondents to put on evidence for a directed verdict motion from the respondents. So the hearing concluded with only one side there? Yes. Yes, and then they allowed... That doesn't sound like a hearing to me. You said, well, they continued. They continued without the presence of the claimant or his counsel. His counsel was ill, and the claimant said he couldn't be there that day. And so they said, well, that's okay. We'll just proceed only with the defendant. Yes, but his counsel, Mr. Mertz, was ill, but Mr. Sayert had abandoned, and Ms. Mertz, who was present, said, I'm leaving. And so they said, we have enough information. Let's go forward. And by the way, Mr. Mertz, in his opening statement, said, I'm going to call two witnesses. I know I'm going to call two witnesses. One was Ms. Vaisakhi, who was J.P. Morgan's corporate representative, who he did call that first morning and concluded his examination of her. The other was Mr. Sayert. So, again, looking at whether the arbitrators had any reasonable basis, putting yourself in their shoes, and I want to walk through the circumstances that led to that point the second afternoon. Putting yourself in their shoes, they had the exhibits. They had the testimony from Ms. Vaisakhi. They knew they were not going to have the testimony from Mr. Sayert because he had abandoned the hearings. But leading up to this, before that, we had the situation with Mr. Sayert. They had reason to be skeptical and suspicious of the reasons that were being presented to them. Mr. Sayert, for seven, eight months, didn't disclose to anybody, to Chase, to the arbitrators, that his wife was pregnant. Then the first morning of the hearing, just before opening statement, Mr. Mertz says, by the way, Mr. Sayert's wife is pregnant, and he might have to go to the hospital. He didn't say we're going to need an indefinite postponement. He didn't say we're going to need days. He said, basically, the hearing may be interrupted briefly. Then he proceeded with his opening statement where he said, here are the two witnesses I know I'm going to call. Then, after there's evidence in the record that there was some question about his preparedness to conduct that examination of Ms. Vaisakhi that morning, then Ms. Mertz came in in the afternoon and said, he's not feeling well. We want a continuance until tomorrow. Everybody said fine. Then that evening, Ms. Mertz emailed counsel for the respondents for Chase and said, who are the witnesses? We're asking about witnesses for the next day, asking about exhibits. Then the next morning, then there's this, again, a request for a longer continuance. In the statement of claim of the plaintiff, wasn't Ms. Morgan Mertz also listed? For the defamation claim, Ms. Morgan Mertz allegedly is the person who fired Mr. Sayert. So, for the defamation claim, wasn't it important for the arbitration panel to at least hear Ms. Morgan Mertz testify? I assume she would probably corroborate J.P. Morgan's version of the events, but you don't know until you actually hear the witness, right? Well, I don't know that the claimant that Mr. Sayert identified Mr. Mertz. There's no offer of proof to that effect. There's nothing in the record that indicates that they wanted to call Ms. Mertz. Again, Mr. Mertz, in his opening statement, said, I hear the two witnesses I know I'm going to call. And with respect to what they would have presented, to your question to Ms. Mertz, Your Honor, there was no offer of proof made to the arbitrators at the time that Ms. Mertz requested the continuance to say, look, we need more time because we have more witnesses or this evidence to present or Mr. Mertz needs to address their exhibits. Nothing like that. But isn't that obvious? This arbitration hearing was scheduled for nine days originally, then later four days with evening sessions. They were able to present half a day. I think it's pretty obvious that they have other evidence they're going to present, and I think it was obvious to the arbitration panel. Otherwise, they wouldn't have scheduled it for nine days, right? I don't know why the hearing was scheduled for nine days because I wasn't arbitration counsel, but they must have anticipated more evidence from one side or the other or both. So continuing on with the timeline, the second morning, Ms. Mertz comes in and says, we need a longer continuance because Mr. Mertz is not feeling well, and Mr. Sayre has to be with his wife who is having a baby and unavailable until next week. That was the statement. That would be the next Monday, right? Yes, yes. And so the arbitrator said, okay. They clearly expressed some concerns about that. One of the arbitrators said to Ms. Mertz, your husband yesterday gave us notice clearly that Mr. Sayre might be out for a day while his wife was having a baby. Now you're saying longer. But, and as any reasonable judge would, to use your example, Your Honor, of what the district court would do, the arbitrator said, please substantiate your request for continuance and the reasons why you're requesting that. Come back with a note from the doctor for Mr. Mertz and come back with a note from Mr. Sayre about his requested unavailability. And so they considered that, and then that afternoon, Ms. Mertz came back with a doctor's note from that day, not from the day before, when Ms. Mertz said Mr. Mertz had to go to the doctor, just saying that he had to go for more examination. He had been to urgent care and they had sent him to the emergency room because they hadn't had the sufficient. Well, let me read. I'm on page 158 of the excerpts of record. It's arbitrator Torstey. I probably have his name wrong. I think I can speak for the panel on this. It's our intention, if at all possible, to complete this hearing in total by Friday. If that means extra sessions in the evening, we're prepared to do that. And therefore, they had indicated that they wouldn't wait until the next Monday even if Mr. Mertz and Mr. Sayre could be there, right? Well, at that point in time, he was, I think, waiting for the information. So we don't know what the arbitrators. We have arbitrators that say they have flights back to the Midwest on 2 o'clock, 420, and 420, even though the arbitration has been scheduled for nine days, and an arbitrator saying we have to finish this by Friday because we have flights. So I'm not sure there was any willingness on the part of the arbitrators to come back the next Monday and complete the hearing. In fact, the record seems to indicate that they weren't willing to. Well, that request was not presented to them. First of all, the record about the flight, I think that was Respondent's Counsel who was saying if we're going to postpone, I have a 2 o'clock flight, and that was a discussion about when are we going to come back this afternoon. But in any event, the arbitrators at that point in time, they didn't know what they were going to get from Ms. Mertz. Once they received the information from Ms. Mertz, they got the letter not only regarding the doctor's note regarding Mr. Mertz, which was vague, but also now a note from Mr. Sayre saying not that I request until next week, but I am taking 12 weeks off. I will not be here. He was abandoning the hearings. And they expressed concern about we understand the need to be with his family at least for a short period because of the parent birth of his baby. Is there some requirement in the arbitration rules that the claimant be physically present at the hearing? No. So I've done some of these in the distant past, but I'm sure they've changed. It's a civil proceeding. His lawyer could present his case on his behalf even if he's not there. His testimony might be unavailable, but his lawyer can continue to present his case. Right. So the fact that the claimant says I can't be present doesn't mean that the hearing is abandoned, does it? Well, in effect, no. And that's why I think that's why the arbitrators took the step of proceeding. Without counsel or Mr. Sayre present? Yes. Even though they knew counsel had a note that said he had to be off work until the end of the day Friday? But they were facing an indefinite continuance. They had talked about their— See, and that's what I'm trying to get you to respond to me on. The other side may have been negligent in the way they requested the continuance, and that may be enough for your purposes to make this not arbitrary or capricious. What I don't see in the record is the arbitrator saying, look, we can't give you an indefinite continuance, but if you're better on Monday, we can come up and wrap up the hearing on that day. The record doesn't show that, does it? No, it doesn't. And so we don't—it's not the court's role to say—to examine that closely, what the arbitrator should or should not have done. Did they have a reasonable basis for making their decision? And what they had was, looking at their perspective, first they had Mr. Sayre not saying anything about being out. Then after watching the first morning of the hearing, Mr. Sayre saying, I'm not coming back, then a note from Mr. Sayre. Nobody doubts, by the way, that his wife gave birth, does he? Well, actually, in the record, his wife did not give birth that week. His wife did not give birth until a week later. So the implication that his wife was in the process of having a baby was not true. So if the arbitrators were— No, it was true. She just wasn't—she wasn't as far along in the process as you might—somebody might have said, you can't have a baby in a week. Nobody doubts that she was nine months pregnant or close to nine months pregnant, whatever it was, and that the birth of the baby was coming. But the implication that it was happening and he had to be out then was not true. The arbitration could have proceeded through the next week, and the baby still wouldn't have been born. But he abandoned the hearings, and the arbitrators were faced with that, and so it was reasonable for them to conclude that we don't have this option of going forward the next Monday because Mr. Sayre is gone. His counsel has said we want an indefinite continuance. What was presented to them by both counsel and Mr. Sayre was a request for an indefinite continuance, and it was reasonable for them to say we have sufficient evidence here, this is an arbitration, and there are plenty of cases that say that waiting for another year would be an unnecessary delay. You've run past your time limit. Thank you. Thank you. Thank you. Thank you. Very briefly, I know I only have two minutes. Talking about the witnesses, the opposing counsel said that Mr. Murch was finished examining the witness that he did in the morning. Well, if you look at ER 145, which is when it concludes from the morning session, they take the break. He's not done. So it would pick up with continuing her examination, then the respondent would do their cross-examples. So we were not done with Ms. Bosky. And then on the evening before, we had agreed the night before to tell each other whose witnesses are going to be called, and I had sent an email, which is at ER 584, that says we want to call Rebecca Morgan Murphy tomorrow, who was not the prior person who testified. So let's assume that the record makes clear that you intended to call further people. What's troublesome is that nobody on your side said, look, we'll be ready, willing, and able to go next Monday or the Monday after or the Monday after that. In other words, you presented a note saying Mr. Murch was unavailable until Friday. Yes. But where is there on your side anybody saying, look, we'll come back next Monday and wrap it up? As far as Mr. Murch's availability, it was unknown. He was in the ER. I didn't know if he would be available. But I did say, if I'm given the time, I can do it. If I said till Monday, I don't know, I can't represent to the court. I said I'll be ready Monday. But if given the time, I would have been ready and able to do it. I understand that's your position. I'm trying to figure out if that was ever communicated to the arbitrators. You know, I don't remember. I don't want to say something that I don't know the answer to and represent something. Maybe it's in there. Maybe it's not. I just can't find a citation right now to say that. But I know I did say I could be ready if I were given the time to prepare. And I did say at least the three days in the briefing to, I know, to the district court and to you. And they have the document. And they referenced that in your order, as I stated before. Thank you. Thank you.  And this case will be submitted.
judges: Hurwitz, Owens, Lee